UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONDA RATHBUN,

       Plaintiff,

v.

FAMILY DOLLAR STORES OF
MICHIGAN LLC,

       Defendant.
_____/

Case No. 2:23-cv-10854

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18)**

While shopping at Family Dollar, Ronda Rathbun slipped and fell on a puddle of spilled dish soap. So she sued for premises liability, arguing that Family Dollar breached its duty to keep its aisles clear of hazards. However, because Rathbun failed to establish that the spill existed long enough for a reasonable juror to infer that a Family Dollar employee should have known about it, her case must be dismissed.

**I. BACKGROUND**

In May 2021, Rathbun stopped at the Family Dollar in Perry, Michigan. ECF No. 18-1 at PageID.102. She was "on a mission" to buy some Smarties, so she headed straight for the candy aisle after entering. *Id.* at PageID.103. While nearing the end of that aisle, Rathbun slipped and fell on a two-foot-wide puddle of clear dish soap, which she did not notice because the clear soap blended into the tile floor.

*Id.* at PageID.104–05. At most, she was in the store for only "a few minutes" before she fell. ECF No. 19-1 at PageID.168.

At that time, two employees—a cashier and an assistant manager—were working in the store, and a few customers were there. ECF No. 18-1 at PageID.122–23. "Right before" Rathbun entered the store, the assistant manager performed "recovery," a routine walkthrough where she would tidy up the store's aisles and shelves. *Id.* at PageID.123, 126. The assistant manager walked through the area where Rathbun would soon fall, making sure to inspect the floors. *Id.* at PageID.126. The assistant manager noticed nothing there during her walkthrough—no soap bottle, no spill. *Id.* She then left for a smoke break, after which Rathbun entered the store and fell. *Id.* at PageID.122–23. The cashier and a customer came to Rathbun's aid, with the customer immediately spotting the spill. *Id.* at PageID.115–16. Yet the assistant manager did not notice the spill "at first" when she approached Rathbun. *Id.* at PageID.123.

How the soap spilled is a mystery. No one—not Rathbun, the assistant manager, the cashier, or the good-Samaritan customer—can explain how the dish soap ended up in the candy aisle in the first place. *Id.* at PageID.104, 117, 126–27; ECF No. 19-2 at PageID.245. In fact, dish soap is usually displayed "halfway across the store" from there. ECF No. 18-1 at PageID.126. In addition, no testimony explains how the cap came off the bottle, *see id.* at PageID.97–111, 113–18, 125,

133, though it was found near where Rathbun fell, *id.* at PageID.132. The bottle itself was found near the aisle's endcap. *Id.* at PageID.124.

It is also unclear exactly when the spill happened. Rathbun testified that she did not know how long the spill had been there before her fall. *Id.* at PageID.104. So did the customer, the assistant manager, and the cashier. *Id.* at PageID.117, 126–27; ECF No. 19-2 at PageID.246. Even so, the parties attempt to establish a timeline by focusing on when the assistant manager performed her walkthrough. Rathbun suggests that, because the parties agree that she was in the store for only a "few minutes" before her fall, it "stands to reason" that the spill happened before the assistant manager's walkthrough and smoke break. ECF No. 19-1 at PageID.168. Rathbun concludes that the assistant manager inspected the area negligently during her walkthrough and simply missed the spill. *Id.* at PageID.168–69. By contrast, Family Dollar argues that the spill happened after the assistant manager did her walkthrough and went on break. ECF No. 20 at PageID.277. Notably, the assistant manager testified that she "would have seen the liquid on the floor with the tiles that we had" because "the tiles show liquid very well." ECF No. 18-1 at PageID.127.

Ultimately, Rathbun sued Family Dollar for premises liability and employee negligence. ECF No. 1 at PageID.8–12. Family Dollar moved for summary judgment, ECF No. 18, which has been fully briefed, ECF Nos. 19; 20. A hearing is not necessary. E.D. Mich. LR 7.1(f)(2).

## II. STANDARD OF REVIEW

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). If so, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 251, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See Liberty Lobby*, 477 U.S. at 251–52.

## III. ANALYSIS

In this diversity case, Michigan's substantive law governs. *State Auto Prop. & Cas. Ins. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941)). To establish negligence—including premises liability—under Michigan law, plaintiffs must prove duty, breach, causation, and harm. *Kandil-Elsayed v. F & E Oil, Inc.*, 1 N.W.3d 44, 51 (Mich. 2023). In the premises-liability context, store owners owe a duty of care to customers, who take the status of invitees upon entering the property. *Id.* at 52 (citing *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 92 (Mich. 2000). Namely, store owners

must "exercise reasonable care to protect invitees [like Rathbun] from an unreasonable risk of harm caused by a dangerous condition of the land." *Id.* at 52 (quoting *Bertrand v Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995)).

Store owners may breach this duty in three ways. *Clark v. Kmart Corp.*, 634 N.W.2d 347, 348–49 (Mich. 2001) (per curiam) (quoting *Serinto v. Borman Food Stores*, 158 N.W.2d 485, 486 (Mich. 1968)). First, they may breach through their own "active negligence" by directly creating or contributing to a dangerous condition. *See id.* Second, they may breach when they have "actual notice"—when they know about a dangerous condition but fail to fix, warn about, or guard against it. *See id.* Third, they may breach when they have "constructive notice"—when, despite not knowing about the dangerous condition, the condition existed long enough or was of a character such that they should have known. *See id.*

### A. Active Negligence and Actual Notice

Although Rathbun alleges that Family Dollar employees negligently caused the soap spill, "creat[ing] an unreasonable hazard," ECF No. 1 at PageID.11, she has neither provided evidence in support nor maintained that position in her response brief, *see* ECF No. 19-1 at PageID.170. That is enough to dismiss her active-negligence claim. *See Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021) (holding that arguments made after plaintiff filed "response opposing [defendant's] motion for summary judgment" are "untimely and forfeited").

As to actual notice, Rathbun has offered no evidence to demonstrate that Family Dollar or its employees actually knew about the spill. Instead, she focuses purely on constructive notice. *See generally* ECF No. 19.

### B. Constructive Notice

Constructive notice requires evidence upon which a reasonable juror could conclude that "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 350 (Mich. 2016) (per curiam). Factors such as the type of hazardous condition involved and how much time has passed may establish constructive notice. *Banks v Exxon Mobil Corp.*, 755 N.W.2d 455, 455 (Mich. 2007) (citing *Kroll v. Katz*, 132 N.W.2d 27, 31 (Mich. 1965)).

Whether a defect has existed long enough to impute notice is typically a question of fact. *Id.* However, plaintiffs must present more than "mere conjecture or speculation" to survive summary judgment. *See McNeill-Marks v Midmichigan Med. Ctr.-Gratiot*, 891 N.W.2d 528, 535 (Mich. Ct. App. 2016). Notably, "litigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess"; the nonmoving party must provide enough evidence to establish a genuine issue of material fact. *Skinner v. Square D Co.*, 516 N.W.2d 475, 484 (Mich. 1994).

Here, Rathbun has failed to provide enough evidence to raise a material fact question with respect to constructive notice. Her claim that the spill existed long enough for Family Dollar to know about it is based on speculation and conjecture.

For instance, Rathbun assumes that the spill happened before the assistant manager's walkthrough because only Rathbun and the assisting customer were in the store afterward, and neither of them spilled the soap. ECF No. 19-1 at PageID.167–68. But that conjecture contradicts the unrefuted testimony that "maybe three or four" other customers were present. ECF No. 18-1 at PageID.123; *accord* ECF No. 19-2 at PageID.245–46 (testifying that there were "no more than a dozen" other customers present).

Rathbun also asserts that the absence of the bottlecap in Family Dollar's photos suggests that the spill was there long enough for Family Dollar to notice it. ECF No. 19-1 at PageID.168 ("[T]he fact that [the bottlecap] was allegedly found in another part of the store indicates that this hazard existed for a long enough time for it to have been discovered.").

For several reasons, that assertion is unpersuasive. First, the only relevant evidence in the record is that the bottlecap was found near Rathbun after she fell, not elsewhere in the store. ECF No. 18-1 at PageID.132. Moreover, Rathbun offers no evidence linking the bottlecap's distance from the spill to how long the spill existed. To put a finer point on it: what if, only two minutes before Rathbun fell, the soap

bottle dropped from a customer's cart, and the impact sent the bottlecap flying into another aisle? Where the bottlecap was found would say nothing about when the spill happened. In sum, Rathbun's argument in this regard is pure speculation.

Rathbun also surmises that constructive notice is established because the assistant manager performed a negligent inspection by missing the spill during the walkthrough. ECF No. 19-1 at PageID.169. However, under Michigan law, "a defendant need not offer evidence of a 'routine or reasonable' inspection to prove that it lacked constructive notice of a hazard on its property." *Easton v. Meijer, Inc.*, No. 363597, 2023 WL 8106830, at *2 (Mich. Ct. App. Nov. 21, 2023), *appeal denied*, 3 N.W.3d 814 (Mich. 2024) (per curiam) (unpublished) (quoting *Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 349 (Mich. 2016) (per curiam)). That is, Rathbun's reliance on inspection quality establishes nothing; it is "legally irrelevant." *Id.*; *see also Harrell v. City of Detroit*, No. 232204, 2002 WL 1747691, at *1 (Mich. Ct. App. July 23, 2002) (per curiam) ("Constructive notice cannot be inferred from the fact that the city failed to undertake inspections and thus failed to discover a defect that an inspection would have revealed." (citation omitted)).

Rathbun also fails to provide any evidence that the spill was around long enough to impute notice to Family Dollar. For instance, Rathbun offers no evidence that others had previously encountered the spill, like a footprint, *see Ritter v Meijer, Inc.*, 341 N.W.2d 220, 222 (Mich. Ct. App. 1983) (per curiam), or that the spill had

started to dry around the edges, *see Easton*, 2023 WL 8106830, at *3. Such evidence might imply constructive notice[1] but is absent here.

Instead, Rathbun vaguely references "the differing accounts of the witnesses" for why the jury must decide the constructive-notice issue here. ECF No. 19-1 at PageID.167. However, she does not attempt to identify or to explain any material discrepancies between the testimony. Further, the record reveals no apparent material difference: no one testified that they knew how or when the spill happened, which hamstrings Rathbun's constructive-notice argument. *See Whitmore v. Sears, Roebuck & Co.*, 279 N.W.2d 318, 322 (Mich. Ct. App. 1979) (finding no constructive notice because "how and when" spill occurred "were matters of conjecture").

The only evidence tending to establish the timing of the spill is the assistant manager's uncontested testimony that she inspected the floor and saw no spill "right before" Rathbun entered the store. The only reasonable inference that the jury could draw from this testimony is that the spill occurred a minute or two *after* Rathbun entered the store. This conclusion contradicts the inference for which Rathbun

---

[1] It should be noted that in *Easton*, the Michigan Court of Appeals found the statement that the spill had begun to dry around the edges too speculative to establish constructive notice. 2023 WL 8106830, at *3. Even so, this demonstrates the type of argument about the nature or character of the spill that Rathbun could have, but does not even attempt, to make.

argues.² Yet even if this were true, no reasonable juror could find that enough time had passed for Family Dollar to have constructive notice. The Michigan Supreme Court has previously found a jury question on constructive notice when a gas station had, at most, eight minutes to discover and to correct the defect. *Banks*, 725 N.W.2d at 455. Here, by contrast, the timeline is much shorter: first, the assistant manager finishes her walkthrough—without seeing a spill—moments before Rathbun enters the store. Then, Rathbun enters the store "on a mission," grabbing a cart and making a beeline for the candy aisle, where she slips and falls. At most, Family Dollar would have had a minute or two, perhaps even less, to discover the spill, which is not enough time to establish constructive notice. *Bragg v. Daimler Chrysler*, No. 290371, 2010 WL 3604428, at *6 (Mich. Ct. App. Sept. 16, 2010) (per curiam) (holding that, when the only evidence demonstrates that the hazard could have been present from "an hour and a half" to "a few minutes prior to the fall," the "plaintiffs have not established a question of fact with regard to constructive notice").

Even if a few minutes could support an inference of constructive notice—they do not—Rathbun's claim would fail because she "did not present any evidence that [anyone] had actual knowledge regarding the timing of the event prior to her fall."

---

² In her response, Rathbun claims the assistant manager testified that she checked the aisles "ten to fifteen minutes" before the fall, but there is no supporting evidence in the record. *See* ECF No. 19-2 at PageID.222–29. The assistant manager merely testified that she was on a ten-minute smoke break when Rathbun fell, not that Rathbun fell near the end of that smoke break.

*Hagel v. Pampa Lanes, Inc.*, No. 262136, 2006 WL 173173, at *3 (Mich. Ct. App. Jan. 24, 2006) (per curiam). At bottom, all of Rathbun's arguments are mere conjecture, so summary judgment is proper. *Jaber v. Meijer Grp., Inc.*, No. 348158, 2020 WL 4920969, at *4 (Mich. Ct. App. Aug. 20, 2020) (per curiam) ("Here, plaintiff presented no evidence supporting a reasonable inference that the water had been on the floor for more than a minute, more than an hour, or half the day.").

### C. Open-and-Obvious Doctrine

Because constructive notice is dispositive, the open-and-obvious doctrine need not be addressed. *See Easton*, 2023 WL 8106830, at *4 n.4.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 18, is **GRANTED**.

Further, it is **ORDERED** that the Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

**This final order closes the above-captioned case**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: 8/14/2024